UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ESTHER VALDEZ, § | |
| § | |
| Plaintiff, § | |
| v. § | |
| § | CIVIL ACTION NO. A 11 CA 615 LY |
| CITY OF AUSTIN, TEXAS; TRAVIS § | |
| COUNTY, TEXAS; and STEVEN § | |
| WILLIS, § | |
| Defendants. § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Esther Valdez respectfully brings this action against Defendants City of Austin and Travis County for their failure to reasonably accommodate her disability and against Defendant Steven Willis for his unreasonable seizure and false imprisonment of her, and in support thereof states as follows:

STATEMENT OF THE CLAIM

1. Plaintiff Esther Valdez, a deaf woman, files this petition against Defendants City of Austin and Travis County because they failed and refused to reasonably accommodate her by not making their services accessible to individuals with hearing disabilities.  Ms. Valdez claims that these failures discriminate against her and those like her in violation of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794 ("Section 504"), Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12131 *et. seq.* ("ADA"), and the Texas Human Resources Code, TEX. HUM. RES. CODE §§121.001 *et. seq.* ("Chapter 121"). Ms. Valdez seeks declaratory and injunctive relief, damages, attorneys' fees, and costs as redress from Defendants City of Austin and Travis County for their unlawful discrimination based on her disability.

1

2. Ms. Valdez also brings this civil action for declaratory, injunctive, and monetary relief against Defendant Steven Willis, alleging discriminatory and unlawful deprivation of constitutional rights under color of law and in violation of the Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

PARTIES

3. Plaintiff Esther Valdez is deaf and her hearing disability substantially limits one or more of her major life activities. She prefers to communicate primarily through "total communication," which involves both American Sign Language and vocalization. Ms. Valdez is a person with a "handicap" as defined by Section 504, a qualified "person with a disability" as that term is defined under the ADA, and a "person with a disability" as defined by Chapter 121. She also has full entitlement to the rights given under the U.S. Constitution, including the protection to be free from unreasonable seizure, made applicable to the state and state actors by and through the Fourteenth Amendment.

4. Defendant City of Austin is a municipality located in Travis County, Texas, and a public entity as that term is defined in Title II of the ADA, and is therefore subject to the requirements of the ADA. Because the City of Austin is a recipient of federal financial assistance, it is also subject to the requirements of Section 504. The City of Austin operates the Austin Police Department (APD) and is responsible for all the actions of the Austin Police Department. The City of Austin is responsible for ensuring that, at all times, the APD meets the requirements of Section 504, the ADA, and Chapter 121 in compliance with federal and state law. The City of Austin is also responsible for the actions of its municipal courts. The City has appeared in this matter.

5. Defendant Travis County is a political subdivision of the state of Texas. Travis County is likewise subject to the requirements of Section 504, the ADA and Chapter 121 as a

public entity and as a recipient of federal financial assistance. Travis County is responsible for the actions of the Travis County Sheriff's Department. Travis County has appeared in this matter.

6. Defendant Steven Willis is an Officer of the APD. At all relevant times, Willis was employed and acting as a police officer of the APD, and was acting as an agent, servant, and employee of the APD, and, as such, was responsible for upholding the laws of the United States and Texas. Willis is sued individually for claims enumerated specifically below. Willis has appeared in this matter.

7. In all actions described herein, Defendant Willis acted under color of law and pursuant to legal authority.

## JURISDICTION AND VENUE

8. Pursuant to 28 U.S.C. §§1331 and 2201, this Court has jurisdiction over these claims. Ms. Valdez also invokes this Court's supplemental jurisdiction, under 28 U.S.C. §1367, to hear her state law claims.

9. All the actions and alleged violations occurred in Austin, Texas. Accordingly, venue is proper in this Court, pursuant to 28 U.S.C. §1391(b).

## STATEMENT OF FACTS

10. Ms. Valdez was born in 1986 with bilateral hearing loss. Ms. Valdez relies on a mixture of American Sign Language and vocalization, with some limited ability to lip-read in order to communicate and some limited auditory capabilities with the use of a properly functioning hearing aid. Her writing skills are poor to fair, and her general comprehension of the English language is weak. In spite of her disability, through much effort and study, Ms. Valdez learned to speak sign language andto vocalize sounds while attending public school.

11.    Ms. Valdez grew up to become a participatory and functioning member of society. Ms. Valdez graduated from high school, and now spends her time in pursuits beneficial to her community. Among them, she volunteers helping the homeless at the Community of Austin's STD/HIV/AIDS program and babysits her niece and nephew. Ms. Valdez has fostered a great love for the arts, including drawing, painting, sculpture, and photography, and she aspires to go to college when she can get funding.

12.    On June 16, 2009 Ms. Valdez and her friend, Hilda C. Bermudez, were walking along a North Austin sidewalk to go to the grocery store to get batteries for Ms. Valdez's hearing aid. They were having an animated conversation using sign language.

13.    Defendant Officer Steven Willis of the Austin Police Department saw Ms. Valdez and her friend engaged in their sign language conversation. He pulled his car over behind them, got out of his car, ran after them, and grabbed Ms. Valdez's arm to get the pair to stop.

14.    Ms. Valdez and Ms. Bermudez were not violating any law. Defendant Willis had no reason to stop them.

15.    After Defendant Willis grabbed Ms. Valdez's arm, Ms. Bermudez immediately informed him that Ms. Valdez was deaf. Upon learning that Ms. Valdez was deaf, Willis did not attempt to communicate with Ms. Valdez. Instead, he questioned Ms. Bermudez about their actions and ignored Ms. Valdez.

16.    Ms. Valdez was wearing a hearing aid at the time; however, the batteries were dead and the device was not functioning during the encounter. While Defendant Willis questioned Ms. Bermudez, who is hearing, Ms. Valdez was not able to understand what was occurring or why Willis had stopped them. Frightened, Ms. Valdez attempted to text her mother on her cell phone for help.

17. Defendant Willis then roughly grabbed the phone from Ms. Valdez and placed it on the bridge without attempting to explain to Ms. Valdez why he had taken it away. Ms. Valdez was not violating any law. Willis acted unreasonably in taking Ms. Valdez's personal property out of her hands. He then resumed talking to Ms. Bermudez and continued to ignore Ms. Valdez as she stood next to them.

18. Frustrated with the lack of communication and struggling with her increasing anxiety over not knowing what has happening, Ms. Valdez picked up the phone and stepped aside to call 911 because she felt threatened. Even though she could not hear, she was prepared to vocalize as best she could a request for help. At this point Defendant Willis had not made any attempt to communicate with Ms. Valdez. He had not communicated to her that she was not free to leave.

19. While Ms. Valdez was stepping away, with her back to Defendant Willis, Willis ran after her yelling at her to stop and place her hands behind her back, even though he knew she was deaf and could not hear him. He grabbed her, overpowered her, and slammed her onto the sidewalk.

20. Ms. Valdez, in terror and pain, screamed that she was deaf. Ms. Valdez lost both her hearing aid and her glasses, which fell to the sidewalk. Ms. Bermudez again yelled to Defendant Willis that Ms. Valdez was deaf and could not hear him. Ms. Bermudez also informed Willis that Ms. Valdez had a broken hand and that he was hurting her. Ms. Valdez was unable to understand what was going on and became increasingly more distraught, both from anxiety over lack of understanding and pain from Willis' tackle.

21. As a result of being wrestled to the ground, Ms. Valdez suffered abrasions to her left hip and leg. She injured her ankle, which was twisted under her when she was pushed to the ground, an injury which persisted for a month after her arrest. She also re-injured her wrist,

which had been fractured prior to this event.  Finally, Ms. Valdez suffered a panic attack, which caused her to cry uncontrollably and made it difficult for her to breathe.

22. A second officer, Teressa Graves, arrived on the scene and together with Defendant Willis placed Ms. Valdez and Ms. Bermudez in handcuffs and arrested them.  Willis kneeled on Ms. Valdez's back and pressed all his weight upon her in the process of putting on the handcuffs.

23. After Ms. Valdez was handcuffed, Defendant Willis yelled at her again, even though he knew she was hearing impaired.  He then pulled her up and took her to the back of his patrol car.  As Willis placed Ms. Valdez in the patrol car, a third officer, Alfred Trejo, arrived on the scene.

24. The officers, including Defendant Willis, stood outside the patrol cars discussing the situation.  Meanwhile, inside the patrol car, Ms. Valdez continued to experience increased anxiety and emotional distress due to her inability to understand what was occurring.  Officer Trejo, witnessing Ms. Valdez's distress, walked to the patrol car, pulled out his pepper spray, and yelled at her while threatening to spray her with the pepper spray.  Ms. Valdez told Trejo that she couldn't understand him because she's deaf, but Trejo continued to threaten her with the pepper spray.

25. The officers, including Defendant Willis, knew of Ms. Valdez's hearing impairment, yet callously assumed they could communicate by shouting at her, serving only to aggravate the trauma she was experiencing.  All were aware of her hearing impairment, but none called for a sign language interpreter, despite Ms. Valdez's and Ms. Bermudez's repeated statements to inform the officers that Ms. Valdez was deaf and that she did not understand them.  The officers, including Willis, never even attempted to use other auxiliary communication aids, such as writing notes, speaking slowly, or simple hand signals, and in fact prevented Ms. Valdez

from using her hands to communicate by sign language or write notes or text on her phone screen as an alternative means of communication.

26. EMS was called to the scene to evaluate Ms. Valdez's injuries caused by Defendant Willis. An EMT made efforts to communicate with Ms. Valdez by using handwritten notes and deliberate speech.

27. Although the officers clearly needed to communicate with Ms. Valdez at several points during the encounter and there was no immediate danger presented to them, they failed to give primary consideration to Ms. Valdez's communication needs or to ensure any means of effective communication.

28. There was no need for the encounter to take place. Once Defendant Willis initiated the encounter, there was no reasonable suspicion to effect a restraint on Ms. Valdez's liberty. Willis was aware of her hearing impairment, but made no reasonable attempt to communicate with Ms. Valdez. He failed to reasonably take into account the circumstances of her disability, as he escalated the encounter with his heavy-handed and ignorant treatment of a woman with a disability.

29. Defendant Willis did not have a warrant for Ms. Valdez's arrest. Under clearly established law, an officer may make a warrantless arrest for a misdemeanor only if the crime was committed in his presence or within his view. *See* Tex. Code Crim. Proc. art. 14.01(b)

30. Further, under Texas Penal Code § 38.03, an individual is resisting arrest only if she intentionally obstructs a peace officer from effecting an arrest by using force. Though Ms. Valdez was charged with resisting arrest, and no other crime, it would have been clear to a reasonable officer that she was doing nothing of the sort.

31. Ms. Valdez did not use any force at all against Defendant Willis or the other officers present. It is clearly established law that use of force is a necessary element of the crime

7

of resisting arrest, as even passive resistance to an arrest or refusing to cooperate with an officer do not constitute resisting arrest under Texas Penal Code § 38.03. *See Sheehan v. State*, 201 S.W.3d 820, 822 (Tex. App. – Waco 2006, no pet.).

32.   Moreover, Ms. Valdez could not have intentionally obstructed her own arrest, as she did not know she was being arrested.  Willis' failure to inform Ms. Valdez, through an interpreter or other auxiliary aid, that she was being arrested made it impossible for her to form the intent necessary to resist arrest.  It should have been clear to Willis that Ms. Valdez committed no crime, and a reasonable officer in Willis' position would have understood Ms. Valdez's actions as a function of her disability, not as an expression of intent to resist arrest.

33.   Without witnessing all elements of the alleged offense, Defendant Willis plainly did not have probable cause or any legal justification for making the warrantless arrest for resisting arrest.  Thus, by arresting Ms. Valdez, he acted unreasonably as a police officer under the circumstances and egregiously violated her Fourth Amendment rights.

34.   Ms. Valdez had never experienced an encounter with a police officer before.  Due to the traumatizing experience of being in pain, not knowing what was happening to her, and not being able to communicate with the officers, she became increasingly confused, fearful, anxious and upset throughout the encounter.

35.   Despite her obvious distress, the officers, including Defendant Willis, did nothing to attempt to communicate with Ms. Valdez or relieve her anxiety over the situation.  Ms. Valdez was handcuffed for most of the encounter, without access to her glasses, until officers were ready to transport her to jail.

36.   The officers made no attempt to communicate with Ms. Valdez while she was being transported first to the Travis County Correctional Complex in Del Valle, then to the Travis County Jail and Central Booking Facility in downtown Austin.  Defendant Willis made no

attempt to communicate to Ms. Valdez her rights while under arrest, or tell her where she was being transported or why.

37.     Once Ms. Valdez was transferred to the custody of Defendant Travis County upon her arrival at the Travis County Jail and Central Booking Facility, she remained unable to effectively communicate with the Travis County Sheriff's Department and its employees due to Travis County's failure to accommodate her disability.

38.     Travis County failed to provide Ms. Valdez with a suitable means of making a phone call. Ms. Valdez was offered use of a pay phone but could not use it due to her hearing impairment. Ms. Valdez tried to ask for help, indicating that she couldn't use the phone to reach her mother and couldn't understand what was being said, but because of the callous indifference of Travis County's officers, she was unable to get any assistance.

39.     Ms. Valdez was detained by Travis County at the Travis County Jail and Central Booking Facility to await appearance before a magistrate. At no point during her detention under the custody of Travis County did Ms. Valdez have an interpreter; she was instead forced to rely on a fellow detainee to help her communicate with Travis County Jail employees.

40.     Travis County's officers then took Ms. Valdez to appear before a magistrate as required by law. During her appearance before a City of Austin municipal judge, she did not have access to a qualified deaf interpreter to ensure effective communication between herself and the magistrate, as required by Articles 15.17(a), 15.17(c) and 38.31 of the Texas Code of Criminal Procedure.

41.     From her arrest to the time of her release, Ms. Valdez never understood why she had been arrested or for what crime, or the nature of the prosecution, due to the lack of effective communication with Defendants and the failure of Defendants to provide an interpreter or other effective means of communication.

9

42. In each of the above interactions, Ms. Valdez was deprived of important information during her long and arduous detention. Defendants' actions and inactions left Ms. Valdez with limited understanding of her situation and no ability to effectively ask questions or receive information from those holding her in custody.

43. Furthermore, as a result of Defendants' discriminatory conduct, Ms. Valdez sustained damages, including physical injuries, loss of self-esteem, severe emotional distress, and continued feelings of isolation and segregation. Her inability to trust the police and courts to serve and protect her in the same manner that they protect and serve persons without disabilities persists.

44. Defendant Willis unreasonably restrained Ms. Valdez, both by refusing to permit her to step away from him to call 911 and by arresting her for no reason. He failed to make reasonable efforts to communicate with her, even though he knew she was hearing impaired, and failed to accommodate her disability. The failures in communication that resulted from Defendant Willis's disregard for Ms. Valdez's condition led to her unjust and unreasonable seizure. Moreover, Willis' callous disregard of Ms. Valdez's condition led to his unreasonable use of force in effecting her arrest, causing pain and injury to Ms. Valdez.

45. The City of Austin's officers, including Defendant Willis, failed to provide Ms. Valdez with a qualified interpreter anytime before, during, or after her arrest, or during her appearance before a municipal judge. The City's conduct harmed Ms. Valdez by excluding her from services and preventing effective communication with the police during her arrest and with the municipal court.

46. Travis County failed to provide appropriate telecommunication devices or interpreters while Ms. Valdez was in custody. The County's conduct harmed Ms. Valdez by

excluding her from services and preventing effective communication, thereby limiting her ability to understand the criminal process initiated against her.

## CLAIMS FOR RELIEF

Violation of Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act by Defendant City of Austin and Defendant Travis County

47. Ms. Valdez's hearing loss substantially limits or interferes with major life activities, including her ability to hear and effectively communicate with others. Accordingly, she is considered to be an individual with a disability under Section 504, as amended, and the ADA. 29 U.S.C. § 705(20)(B) and 42 U.S.C. §12131(2).

48. Ms. Valdez is eligible for receipt of services from Defendants under Section 504 and the ADA. 28 C.F.R. § 41.32(b) and 42 U.S.C. §12131(2).

49. The police officers who arrested Ms. Valdez, who are agents of the APD and the City of Austin, knew that Ms. Valdez was deaf because Ms. Bermudez and Ms. Valdez herself both repeatedly informed them of her disability and her inability to comprehend them. Moreover, the employees of Travis County, to whom Ms. Valdez was transferred by the APD, knew that Ms. Valdez was deaf.

50. Section 504 states that "no otherwise qualified individual with a disability in the United States… shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Section 504 also requires that recipients of federal monies reasonably accommodate persons with disabilities in their facilities, program activities and services, and reasonably modify such facilities, program activities and services to accomplish this purpose.

51. The APD, as a department of the City of Austin, was and is a recipient of federal monies. Travis County was and is also a recipient of federal monies. Defendants' actions were

also a clear violation of the Section 504.  *See* 29 U.S.C. § 794(d) (explaining that a violation of the Rehabilitation Act will be determined by the standards in the Americans with Disabilities Act of 1990).

52. The ADA requires public entities to provide "appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity." 28 CFR 35.160(b)(1).  Auxiliary aids and services include qualified interpreters and telecommunications devices for deaf persons.  *Id.* § 35.104(1).  The ADA expressly provides that discrimination against a disabled person occurs when an entity fails to "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii) (2006).

53. The APD, acting on behalf of the City of Austin, did not provide Ms. Valdez with a reasonable accommodation and subjected her to discrimination in the provision of its services on the basis of her disability.  The officers, including Defendant Willis, ignored her or attempted to communicate by yelling at her, neither of which was an effective method of communication with Ms. Valdez.  Instead of treating Ms. Valdez fairly and respectfully, the police failed to inquire into her version of events, arrested her, and caused significant emotional distress.

54. The City of Austin also failed to provide a reasonable accommodation when it failed to provide a qualified sign language interpreter for Ms. Valdez during her appearance before a municipal judge.

55. While detained at Travis County's detention facilities, Ms. Valdez, who is clearly deaf, sought to communicate with her family members but was unable to do so effectively due to the County's failure to provide appropriate telecommunication devices.  Travis County also

failed to provide her with a qualified interpreter while she was its custody. Hence, Ms. Valdez was denied a reasonable accommodation and was frustrated by not being able to communicate with the employees of Travis County.

56. Ms. Valdez was not able to effectively communicate with police, Sheriff's Department officers, or court employees because of the absence of sign language interpreters and appropriate telecommunication devices. Therefore, Defendants failed to provide Ms. Valdez with the appropriate auxiliary aids and services in violation of Section 504 and the ADA.

57. Ms. Valdez, as a resident of Austin, was and will continue to be in need of Defendants' public safety services. She must rely on the same departments that have previously discriminated against her and injured her because of her disability.

58. Current officer and employee training and policies regarding individuals with disabilities are not adequate and/or not being followed. There is a substantial likelihood of this discriminatory conduct reoccurring. Therefore, Ms. Valdez faces a high probability of real and immediate harm if Defendants' practices towards deaf and hard of hearing individuals are not immediately corrected.

Violation of Chapter 121 of the Texas Human Resources Code<br>by Defendant City of Austin and Defendant Travis County

59. Chapter 121 of the Texas Human Resources Code provides that "Persons with disabilities have the same right as the able-bodied to the full use and enjoyment of any public facility in the state." Tex. Hum. Res. Code § 121.003(a). The law prohibits entities such as Defendants City of Austin and Travis County from failing to "make reasonable accommodations in policies, practices, and procedures." *Id.* § 121.003(d)(2). Chapter 121 further provides that a person may seek a civil remedy in a court of competent jurisdiction if she has been denied access to any public facility or service or an entity has failed to make reasonable accommodations. *Id.* § 121.003 – 121.004.

60. Under Chapter 121, "discrimination" includes a failure to (1) make reasonable accommodations in policies, practices, and procedures or (2) provide auxiliary aids and services necessary to allow the full use and enjoyment of the public facility. *Id.* § 121.003(d)(2)-(3).

61. For the reasons described above, Defendants failed to make reasonable accommodations for Ms. Valdez. By denying Ms. Valdez's access to the services of the police, sheriff's department, and courts in the same manner as non-disabled persons, Defendants violated her rights pursuant to Chapter 121.

62. Chapter 121 provides for a penalty of at least $100 to an aggrieved party for each violation of the law, for which Defendants are liable to Ms. Valdez as a result of the allegations herein. *Id.* § 121.004(b).

Violation of the Fourth and Fourteenth Amendments and<br>False Imprisonment by Defendant Steven Willis

63. The Fourth Amendment protects Ms. Valdez from unreasonable search and seizure. The Fourth Amendment is made applicable to the states through the Fourteenth Amendment. At all relevant times, Defendant Willis was a state actor acting under color of law as an officer of the Austin Police Department. Willis intentionally, and with deliberate, conscious and callous indifference to Ms. Valdez's right to be free from unreasonable seizure under the Fourth Amendment, unlawfully detained and arrested her.

64. Defendant Willis restrained the liberty of Ms. Valdez with the initial stop, even though he had no reasonable suspicion that she had committed a crime, in violation of her Fourth Amendment rights. Willis failed to effectively communicate with Ms. Valdez. As an agent of the APD, he also failed to reasonably accommodate Ms. Valdez's hearing disability in violation of the ADA, Section 504, Chapter 121 and APD policy, which provide an important standard of reasonableness in such circumstances. Under the circumstances, no reasonable officer would have thought there was probable cause to arrest Ms. Valdez. Without being able to effectively

communicate with Ms. Valdez, Willis did not have probable cause to arrest Ms. Valdez. Willis acted unreasonably and in conscious disregard for Ms. Valdez's rights by failing to ensure effective communication with Ms. Valdez and in failing to ascertain whether in fact any crime had been committed. His failure to do so led to his unreasonable arrest and false imprisonment of Ms. Valdez in violation of her Fourth Amendment rights.

65. For the reasons described above, Defendant Willis violated Ms. Valdez's constitutional rights under the Fourth and Fourteenth Amendments.

### RELIEF REQUESTED

#### Declaratory Relief

66. Ms. Valdez is entitled to declaratory judgment concerning the respective violations of Section 504, the ADA, and Chapter 121, by Defendants City of Austin and Travis County, specifying Ms. Valdez's rights under these laws.

67. Ms. Valdez is entitled to declaratory judgment concerning Defendant Willis' violations of the Fourth and Fourteenth Amendments, specifying Ms. Valdez's rights under the Constitution.

#### Injunctive Relief

68. As a proximate result of Defendants' practices, policies and procedures, Ms. Valdez has suffered, and will continue to suffer, immediate and irreparable injury due to denials of her statutory rights. Unless injunctive relief is granted, Ms. Valdez and similarly situated individuals with disabilities will continue to experience unlawful discrimination as a result of Defendants City of Austin and Travis County's failure and refusal to comply with Section 504, the ADA, and Chapter 121.

Compensatory Relief

69. Ms. Valdez is entitled to compensatory damages in an amount of no less than $100 for each statutory violation pursuant to Chapter 121.004(b). There is no statutory limit to these damages.

70. Ms. Valdez seeks compensatory damages for physical injuries, mental anguish, emotional distress, pain, and suffering caused by Defendants City of Austin and Travis County's, violations of Section 504, the ADA and Chapter 121, and Defendant Steven Willis' violation of her constitutional rights.

Attorneys' Fees and Costs

71. To enforce her rights under the Rehabilitation Act and the ADA, and to enforce her constitutional rights, Ms. Valdez had to retain counsel and, thus, is entitled to and seeks an award of her attorneys' fees, costs, and expenses pursuant to 42 U.S.C. §12133, 29 U.S.C. §794a, 42 U.S.C. § 1988(b), and the Texas Declaratory Judgments Act.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiff respectfully prays that this Court:

A. Issue a permanent injunction requiring Defendants City of Austin and Travis County, and their agents, servants, and employees, and all persons in active concert with them, to act in the following manner:

   (1) to provide certified, independent sign language interpreters and any auxiliary aids necessary as reasonable accommodations for the deaf and hard of hearing, to be provided during and after any deaf or hard of hearing person is investigated, arrested, or detained by the Austin Police Department, held in custody by the Travis County Sheriff's Department, or appears before a magistrate;

   (2) to make all modifications, including modifications to training, implementation and enforcement, to Defendants' policies, procedures and services within ninety (90) days that correct the problems complained of herein and that are necessary to ensure complete access to meaningful communication between the police, jailors, magistrates and people who are deaf and hard of hearing, and to ensure access by people who are deaf and hard of hearing to equivalent services from the City of Austin and Travis County during investigation, arrest, detention or magistration; and,

  (3) to not discriminate against persons who have hearing disabilities, and to comply fully with Section 504, the ADA, and Chapter 121;

B. Enter a declaratory judgment that Defendants City of Austin and Travis County's practices, policies, and procedures in the past have prevented, and continue to prevent, Ms. Valdez and like persons from accessing Defendants' facilities and services because of their disabilities, in violation of Section 504, the ADA, and Chapter 121; Specifically, Ms. Valdez seeks a declaration from the court that the failures of Defendants described in the above paragraphs have subjected Ms. Valdez to discrimination in violation of Section 504, the ADA, and Chapter 121;

C. Enter a declaratory judgment that Defendant Willis violated Ms. Valdez's rights under the Fourth and Fourteenth Amendments by unreasonably placing her under arrest;

D. Find that Ms. Valdez is the prevailing party and order Defendants to pay attorneys' fees, costs, and expenses;

E. Order damages of at least $100 for each violation of Chapter 121;

F. Order damages in the amount that the trier of fact deems appropriate for the physical, mental, and emotional injuries Ms. Valdez sustained due to Defendants City of Austin and Travis County's actions in violation of Section 504, the ADA, and Chapter 121 and Defendant Willis' actions in violation of the Fourth Amendment; and,

G. Grant Ms. Valdez such other and further relief, at law or in equity, to which she may be, and is, justly entitled.

Dated: December 16, 2011.

                 Respectfully submitted,

                 /s/ Joseph Berra
                 Joseph Berra
                 Texas Bar No. 24027144
                 Abigail Frank
                 Texas Bar No. 24069732
                 Wayne Krause
                 Texas Bar No. 24032644
                 James C. Harrington
                 Texas Bar No. 09048500

                 TEXAS CIVIL RIGHTS PROJECT
                 1405 Montopolis Dr.
                 Austin, TX 78741
                 (512) 474-5073 (phone)
                 (512) 474-0726 (fax)

                 ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case Files System of the Western District of Texas on December 16, 2011.

/s/ Joseph Berra<br>
Joseph Berra